IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| SHAMINA PLOTT and JACOB PLOTT,<br><br>Plaintiffs,<br><br>vs.<br><br>ADVANCED COMFORT TECHNOLOGIES, INC., d/b/a INTELLIBED, and COLIN M. HOUSE,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 1:18-cv-00048-TC |

Plaintiff Shamina Plott, an employee of the mattress company Advanced Comfort Technologies, Inc. (ACTI), alleges that she was the target of sexual harassment by the company's CEO, Colin House, and that the company discriminated and retaliated against her when she reported his behavior. She brings a claim of discrimination against ACTI under Title VII of the Civil Rights Act of 1964, and pendent state law claims against ACTI and Mr. House. Her husband, Jacob Plott, alleges state law claims of his own.

ACTI and Mr. House (collectively, Defendants) have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of the Plotts' state law claims. They argue that Ms. Plott's claims are preempted by the Utah Antidiscrimination Act, and that Mr. Plott's claims are

deficiently pled. For the reasons set forth below, the court grants in part and denies in part the Defendants' motion.

## FACTS[1]

In February of 2017, ACTI hired Ms. Plott as a sleep wellness consultant in its retail store, Intellibed, at the City Creek Mall in Salt Lake City. Soon after she started, Mr. House, ACTI's CEO, began giving Ms. Plott unwanted attention she termed "sexing"—"looking her up and down for a very long time." (Am. Compl. ¶ 29, ECF No. 15.)

In May of 2017, Mr. House began pressuring Ms. Plott for sex in exchange for promotional opportunities. His pursuit soon became physical. On May 4, while Ms. Plott was working at ACTI's corporate headquarters, Mr. House "physically gripped and pulled [her] towards him, caressed, groped her, and wouldn't let [her] go." (Id. ¶ 31.) On May 9, as the two drove back to the retail store after a lunch, Mr. House asked Ms. Plott personal questions, commented on her physical appearance, and touched her leg. According to the Amended Complaint,

> [w]hen she pulled away, House pursued her pulling her in and kissing her; starring [sic] at her; touching her hair; caressing her; making comments such as "Wow… you're just so beautiful…I was attracted to you from day one…you're so incredible…you can't tell anyone about this…do you think others will be suspicious since we've been gone so long?... No one can find out…" House continued making comments about Plott's physical appearance, her body, and how amazing he felt towards her. After making these comments, House then put his ha[n]d between her breasts and pulled down her shirt.

---

[1] At the motion to dismiss stage, the court accepts the Plotts' well-pleaded factual allegations as true, and views the facts in the light most favorable to them. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

(Id. ¶ 33.)

Two days later, when Ms. Plott confronted Mr. House about his behavior, he locked her in his office, where he again kissed and groped her. Mr. House groped Ms. Plott on two later occasions; on one of those occasions, he exposed himself to her.

On May 26, 2017, Ms. Plott complained about Mr. House's sexual harassment to Brad McLaws, the president of ACTI, and Robert Rasmussen, one of the company's owners. After, she alleges she experienced a hostile work environment and retaliation, which included being

> denied consideration for promotion; denied her voiced desire and applications for any corporate promotion; and further retaliated against with multiple threats of her being insubordinate for raising questions and expressing concerns; reductions in pay and other compensation; being held to different standards; being subjected to increased workloads; being subjected to intimidation and threats against her job and employment.

(Id. ¶ 53.)

On June 15, 2017, Ms. Plott and her husband met with Mr. McLaws and Mr. Rasmussen to discuss her complaint against Mr. House. Mr. Rasmussen acknowledged that Mr. House's conduct "fell below ACTI's standards and expectations." (Id. ¶ 55.) Mr. Rasmussen and Mr. McLaws promised Ms. Plott that she would not face retaliation for complaining to them or for participating in an investigation. But two days later, Mr. Rasmussen and Mr. McLaws asked Ms. Plott to sign a "release of claims" that would have ended her employment.

Ms. Plott and Mr. Plott met with Mr. McLaws and Mr. Rasmussen again on June 23, 2017. At the meeting, Mr. McLaws and Mr. Rasmussen made a number of promises and agreements regarding confidentiality, promotional opportunities, and her working relationship with Mr. House. The agreements were memorialized the next day in an email. According to Ms.

Plott, none of the agreements were honored, and she faced further discrimination and harassment in the months that followed.

## PROCEDURAL BACKGROUND

Ms. Plott and her husband filed their original complaint in this case on May 7, 2018, and the operative Amended Complaint on July 10, 2018. In addition to her Title VII claim, Ms. Plott brings a number of pendant state law claims against ACTI and Mr. House individually. She alleges claims of civil assault, civil battery, false imprisonment, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against both Defendants, and a breach of contract claim against ACTI.

Mr. House joins in his wife's claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. He separately alleges claims of alienation of affections and loss of consortium against both Defendants.

The Defendants have moved to dismiss the Plotts' state law claims under Federal Rule of Civil 12(b)(6). They argue that Ms. Plott's claims are preempted as a matter of law by the Utah Antidiscrimination Act (UADA), and that Mr. Plott has not met his burden at the pleading stage of showing plausible entitlement to relief.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

In ruling on a Rule 12(b)(6) motion, "the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1105 (10th Cir. 2017). But only well-pleaded factual allegations are presumed true. "Legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action" are not entitled to an assumption of truth. Iqbal, 556 U.S. at 678.

## ANALYSIS

The Defendants do not attack the plausibility of Ms. Plott's state law claims. Rather, both Defendants—ACTI and Mr. House individually—seek dismissal on grounds that her claims against them are preempted by UADA. But because UADA preemption can apply differently to claims against employers and individuals, the court will address Ms. Plott's claims against each Defendant separately.

### I. Ms. Plott's State Law Claims Against ACTI

By its terms, UADA is "the exclusive remedy under state law for employment discrimination based upon: (a) race; (b) color; (c) sex; (d) retaliation; (e) pregnancy, childbirth, or pregnancy-related conditions; (f) age; (g) religion; (h) national origin; (i) disability; (j) sexual orientation; or (k) gender identity." Utah Code Ann. § 34A-5-107(15). The Utah Supreme Court has examined the scope of UADA preemption twice—first in Retherford v. AT&T Communications, 844 P.2d 949 (Utah 1992), and again in Gottling v. P.R., Inc., 61 P.3d 989 (Utah 2002).

5

In Retherford, the Utah Supreme Court adopted the "indispensable element" test to determine whether UADA preempts a common law cause of action. The test "relies on neither timing nor conduct to determine preemption." Retherford, 844 P.2d at 964. Instead, "preemption depends on the nature of the injury for which the plaintiff makes the claim." Id. at 965 (internal quotation and alteration marks omitted).

The first step of the test is "the task of determining what injuries the UADA is designed to address." Id. This, the court determined, is "all manner of employment discrimination against any member of the specific protected groups." Id. at 966. A court must then determine if a plaintiff's state law claim "comprehends an injury that is the target of the UADA." Id.

The court revisited UADA preemption in Gottling, but did not overturn Retherford. Instead, the court emphasized UADA's broad effect—that the Act "preempts all common law causes of action for discrimination, retaliation, or harassment by an employer on the basis of sex, race, color, pregnancy, age, religion, national origin, or disability." Gottling, 61 P.3d at 997.

The question before the court, then, is whether Ms. Plott's state law claims are "grounded on allegations and injuries of discrimination and harassment based on gender." Giddings v. Utah Transit Auth., 107 F. Supp. 3d 1205, 1212 (D. Utah 2015).

To prove her civil assault claim, Ms. Plott must show an intent to cause harmful or offensive contact. See Larsen v. Davis Cnty. Sch. Dist., 409 P.3d 114, 122 n.5 (Utah Ct. App. 2017). To prove battery, she must additionally show that harmful contact occurred. See Wagner v. State, 122 P.3d 599, 603 (Utah 2005). False imprisonment requires "an act 'intending to confine the other . . . within boundaries fixed by the actor,' which 'results in such a confinement' while 'the other is conscious of the confinement or is harmed by it.'" Tiede v. State, 915 P.2d

500, 503 n.4 (Utah 1996) (quoting Restatement (Second) of Torts § 35(1) (1965) (alteration in original)).  Each of these claims depends on the acts of sexual harassment allegedly perpetrated by Mr. House, and seeks to remedy the injury caused by that harassment—apprehension, harmful contact, and confinement.  UADA provides the exclusive state law remedy for these injuries, and so preempts her civil assault, civil battery, and false imprisonment claims.

The same is true of Ms. Plott's allegations of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. Again, Ms. Plott's claims stem from Mr. House's alleged sexual harassment and ACTI's discriminatory and retaliatory acts, and seek to remedy emotional injuries resulting from these acts.  These claims are likewise preempted by UADA.

Ms. Plott's claim for breach of contract (and accompanying claim for breach of the covenant of good faith and fair dealing) is preempted as well.  Her claim is based on an employment contract and the oral and written agreements with Mr. McLaws and Mr. Rasmussen following her June 2017 meetings.  She alleges that ACTI breached its contracts by

> desiring in a deceitful, retaliatory, and unlawful manner to get rid of Plott; refusing to honor the express contracts[,] promises, [and] agreements; and making the work environment and circumstances of Plott's employment so intolerable and aggravated that no reasonable person should have to endure such actions by ACTI . . . .

(Id. ¶ 116.)  Ms. Plott's allegations of breach are no different than allegations of discrimination and retaliation.  UADA provides the exclusive remedy for these injuries, and so preempts her contract claim.  See, e.g., Jones v. Huntsman Cancer Hosp., No. 2:12-cv-00814-DAK, 2013 WL 2145764, at *1 (D. Utah May 15, 2013) (dismissing a breach of contract claim as preempted by UADA where the contract "was breached by the Defendant's alleged discriminatory conduct").

7

## II. Ms. Plott's State Law Claims Against Mr. House

Unlike her claims against ACTI, Ms. Plott's state law claims against Mr. House are not preempted by UADA. While UADA provides an exclusive remedy against employers, it does not necessarily preempt standalone claims against individual co-workers or supervisors. See Judkins v. Anderson Drilling, Inc., No. 2:12-cv-00421-DAK, 2014 WL 6682422, at *4 (D. Utah Nov. 25, 2014) (rejecting the argument that "UADA preempts an intentional infliction of emotional distress claim against the alleged harasser rather than the employer"); see, e.g., James v. Frank's Westates Servs., Inc., 747 F. Supp. 2d 1264, 1277–79 (D. Utah 2010) (allowing a claim of intentional infliction of emotional distress to proceed against a company's owner); McFarlane v. Nexeo Staffing, LLC, No. 2:10-cv-00222-DAK, 2011 WL 1226105, at *2 (D. Utah Mar. 30, 2011) (allowing the same claim to proceed against a plaintiff's co-workers). Ms. Plott's state law claims against Mr. House, her alleged harasser, are not subject to preemption.

The Defendants argue otherwise and point to Gottling, in which the plaintiff alleged a claim of wrongful termination against her employer, P.R. Incorporated, and the company's owner individually. The court, in a footnote, stated that its broad UADA preemption holding "renders unnecessary" a discussion of the owner's individual liability. Gottling, 61 P.3d at 997 n.3.

But the plaintiff in Gottling did not allege tortious conduct on the part of the owner. Rather, she sought to hold the owner personally liable for the company's tortious conduct. See id. at 991. Here, Ms. Plott has alleged that Mr. House committed a number of torts himself. He cannot avoid liability simply because his actions might also subject ACTI to claims of workplace discrimination.

### III. Mr. Plott's Claims Against ACTI and Mr. House

Mr. Plott joins in his wife's claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. Separately, he brings claims for alienation of affections and loss of consortium. The Defendants contend that Mr. Plott has failed to plead facts capable of supporting these claims. The court agrees.

To start, Mr. House's negligence claims must be dismissed because he has not pled that he was within the zone of danger of harm. A claim of negligence requires that a plaintiff show "(1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff." Williams v. Melby, 699 P.2d 723, 726 (Utah 1985). To determine liability for negligently-caused emotional distress, Utah courts follow § 313 of the Restatement (Second) of Torts. A plaintiff must show that the defendant unintentionally caused emotional distress, and "(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and (b) from facts known to him, should have realized that the distress, if it were caused, might result in illness or bodily harm." Carlton v. Brown, 323 P.3d 571, 585 (Utah 2014) (internal quotation omitted).

By following § 313, Utah courts have adopted its "zone of danger" requirement. A plaintiff cannot recover for harm "caused by emotional distress arising solely from harm or peril to a third person, <u>unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the [plaintiff]</u>." Johnson v. Rogers, 763 P.2d 771, 780 (Utah 1988) (internal quotation omitted; emphasis in original). Stated differently, "[a] plaintiff cannot recover for

9

negligent infliction of emotional distress unless the plaintiff is a direct victim of the defendant's negligence." Straub v. Fisher and Paykel Health Care, 990 P.2d 384, 388 (Utah 1999).

Mr. Plott has not alleged any facts to suggest he was a direct victim of negligent conduct. He alleges that ACTI and Mr. House "negligently or recklessly breached" duties of care owed to him "in the zone of danger and physical presence of [Mr.] Plott on June 15, 2017 and June 23, 2017." (Am. Compl. ¶ 122.) But he refers only to the meetings he attended with his wife and Mr. McLaws and Mr. Rasmussen, during which the four discussed Mr. House's conduct. There are no allegations in the Amended Complaint suggesting that Mr. McLaws or Mr. Rasmussen acted negligently during these meetings. This type of "unadorned, the-defendant-unlawfully-harmed-me accusation" does state a facially-plausible claim of negligence or negligent infliction of emotional distress. Iqbal, 556 U.S. at 678.

Mr. Plott's intentional infliction of emotional distress claim must be also dismissed, on similar grounds. To prevail on his claim, Mr. Plott must demonstrate that ACTI and Mr. House

> intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

Bennett v. Jones, Waldo, Holbrook & McDonough, 70 P.3d 17, 30 (Utah 2003) (internal quotations and emphasis omitted). "Generally, a person cannot recover intentional infliction of emotional distress damages based on outrageous conduct visited upon a family member without being present when the conduct took place. Hatch v. Davis, 147 P.3d 383, 386 (Utah 2006).

Again, Mr. Plott's allegations rest on his June meetings with Mr. McLaws and Mr. Rasmussen. He alleges that "ACTI and House . . . including in the zone of danger and physical

10

presence of [Mr.] Plott on June 15, 2017 and June 23, 2017, engaged in intentional, atrocious, intolerable, and so extreme and outrageous conduct towards Plaintiffs [Ms.] Plott and [Mr.] Plott as to exceed the bounds of decency." (Am. Compl. ¶ 143.) And again, the factual allegations in the Amended Complaint do not suggest that Mr. Plott suffered from outrageous or intolerable conduct at these meetings or elsewhere.

Finally, Mr. Plott has failed to plead elements of his alienation of affections and loss of consortium claims. An alienation of affection claim consists of the following elements:

> (a) the fact of marriage, (b) that the defendant willfully and intentionally, (c) alienated the wife's affections, (d) resulting in the loss of the comfort, society and consortium of the wife, and (e) (to justify punitive damages) a charge of malice.

Hodges v. Howell, 4 P.3d 803, 805 (Utah Ct. App. 2000) (internal quotation and alteration marks omitted).

Mr. Plott has not alleged any facts to suggest that ACTI or Mr. House alienated Ms. Plott's affections towards him. His sole allegation is conclusory: that, "[a]s a direct result of the actions of Defendants, and/or each of them, there was harm and loss to the husband and wife relationship, resulting in harm and a loss of the comfort, society, affections being alienated, and loss of consortium of the wife." (Am. Compl. ¶ 131.) He does not provide specific facts that make his claim plausible.

The same is true of Mr. Plott's claim for loss of consortium. He must plead "a significant permanent injury" to his spouse "that substantially changes that person's lifestyle." Utah Code Ann. § 30-2-11(1)(a). Utah's loss of consortium statute provides a non-exhaustive list of examples: "(i) a partial or complete paralysis of one or more of the extremities; (ii) significant

disfigurement; or (iii) incapability of the person of performing the types of jobs the person performed before the injury." Id.

Mr. Plott alleges that Ms. Plott suffered "physical and/or emotional injury," (Am. Compl. ¶ 136), but he does not allege that she suffered a significant permanent injury necessary to recover under Utah law. Instead, and apparently misreading the loss of consortium statute, Mr. Plott alleges that he "has suffered permanent injury." (Id.) Regardless, his allegation is not supported by sufficient facts to state a plausible claim for relief.

## ORDER

For the foregoing reasons, the Defendants' Motion for Partial Dismissal (ECF No. 17) is GRANTED IN PART and DENIED IN PART. Shamina Plott's state law claims against ACTI are DISMISSED. Jacob Plott's state law claims against ACTI and Mr. House are DISMISSED and Mr. Plott is hereby dismissed as a party from this case.

SO ORDERED this 2nd day of April, 2019.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge